UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN W. MUNDO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HECTOR CARMONA, et al.,<br><br>　　　　Defendants. | **Case No. 1:16-cv-01687-AWI-MJS (PC)**<br><br>**ORDER FINDING COGNIZABLE CLAIMS AGAINST DEFENDANTS CARMONA, ALBA, ARCHULETA, AND BONFFIL**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS ALL OTHER NON-COGNIZABLE CLAIMS WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 16)**<br><br>**ORDER DIRECTING PLAINTIFF TO RETURN SERVICE DOCUMENTS WITH THIRTY (30) DAYS**<br><br>**FOURTEEN DAY DEADLINE TO FILE OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |

Plaintiff, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 7, 2016. (ECF No. 1.) On February 27,

2017, the Court screened Plaintiff's complaint and found it stated cognizable claims against Defendants Carmona, Bonffil, and Archuleta only. (ECF No. 10.) Plaintiff was directed to file either an amended complaint or a notice of willingness to proceed on his cognizable claims. Plaintiff's first amended complaint is before the Court for screening. (ECF No. 16.)

Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 4.) No other parties have appeared.

**I.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    Pleading Standard**

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada, however his claims stem from events that occurred at the California Correctional Institution ("CCI") in Tehachapi, California and Corcoran State Prison ("CSP") in Corcoran, California. He names Correctional Officers Hector Carmona and Alba of CCI, Lieutenant Archuleta of CCI, Sergeant Bonffil of CCI, "AGPA" K. Cribbs of CSP, and Correctional Counselor I Campa of CSP. Plaintiff alleges failure to protect and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, assault and battery, negligence, and violations of the Bane Act.

His allegations may be summarized as follows[1]:

On or about March 13, 2016, Plaintiff sent a letter to the Ombudsman complaining that Defendant Carmona threatened Plaintiff about being a witness at another inmate's disciplinary hearing. On March 15, 2016, Plaintiff filed an inmate appeal ("602") complaining that his mail had been tampered with, since Plaintiff stopped receiving mail and stationary supplies on February 18, 2016. On March 23, 2016, the 602 was rejected

---

[1] In its first screening order, the Court advised Plaintiff of the appropriate pleading standards for all of the claims the Court found Plaintiff attempted or could feasibly attempt to make based on the facts given. In his amended complaint, Plaintiff largely reproduces the same factual allegations as contained within his first civil rights complaint, even where those allegations are insufficient to rise to the level of a constitutional violation (such as, for example, Plaintiff's allegations regarding his mail or disciplinary proceedings). The Court will therefore not address factual allegations that Plaintiff has not explicitly linked to a particular violation of his rights.

3

based on lack of evidence.

On June 7, 2016, Lieutenant Reyes (not a defendant) interviewed Plaintiff about his letter to the Ombudsman. Plaintiff told Reyes that he no longer wished to pursue his complaint because he was getting out soon and did not want to be retaliated against.

On July 25, 2016, Plaintiff filed a 602 complaining that several correctional officers harassed him on his way to the law library. The next day, Plaintiff sent a letter to the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Scott Kernan (not a defendant) making the same complaints.

On August 4, 2016, Plaintiff asked Carmona to process his legal mail. Carmona responded by "flipping him off." Plaintiff had to ask inmate Foote to send his legal mail on his behalf.

On August 6, 2016, Plaintiff was placed on suicide watch and transferred to CSP. Plaintiff told Drs. Newton and Barda (not defendants) and Defendant Campa about his safety concerns with inmate Moore, but all three said there was nothing they could do about it. On August 15, 2016, while still at CSP, Plaintiff submitted a 602 that he labeled an "emergency appeal." Therein, Plaintiff described his safety concerns with inmate Moore. Plaintiff also submitted a CDCR 22 request form to Campa about Moore. The 602 was found not to meet the criteria for an emergency appeal, and was forwarded to CCI on August 22, 2016.

On August 19, 2016, Plaintiff was returned to CCI and housed in a cell with inmate Moore, who verbally, physically, and sexually abused Plaintiff for two days until Plaintiff was moved back to his old cell. At the time Plaintiff was housed with Moore, his previous cell was still available. Moore told Plaintiff that Carmona let Moore keep all of Plaintiff's property. Carmona's name and signature appeared on the property slip indicating that Carmona was the official who packed Plaintiff's property. Plaintiff learned from inmate Bell that Carmona orchestrated Plaintiff's move into Moore's cell in retaliation for Plaintiff's complaints. Plaintiff did not report the assault at the time because he was afraid that Moore would retaliate against him.

4

On August 24, 2016, while Plaintiff was coming in from the yard, he told Carmona about his safety concerns with Moore. Carmona replied, "Well, you better learn how to fuck or fight . . . you deserve it for writing me up." Alba conducted a "random" clothed body search. Carmona shook Plaintiff from side to side, then slammed Plaintiff into the hard-packed, rock covered ground, purely out of ill will. In an attempt to cover up this use of force, Carmona yelled "stop resisting!" even though Plaintiff remained still and compliant the entire time.

Alba placed handcuffs on Plaintiff. After he handcuffed Plaintiff, he pulled Plaintiff up by the handcuff chain and laughed as he dropped Plaintiff down to the floor multiple times. Carmona knelt with his knee on Plaintiff's neck and held his baton over Plaintiff's head, threatening to "bash Plaintiff's skull in if [he] moved." Alba tightened the cuffs and laughed about how Carmona said "make the cuffs cut his wrists."

Nurse K. Bachelor arrived at the scene and placed Plaintiff on a gurney. Plaintiff was taken to the medical office. He told Nurse Bachelor that he was the victim of retaliation, was scared for his life, and was suicidal. Dr. Montaya was present and Plaintiff told her the same thing. Plaintiff was taken to the unit office and placed in a cage. Defendant Bonffil arrived and asked Plaintiff if he wanted to file a staff complaint. When Plaintiff said yes, Defendant Archuleta arrived and said, "I'll let you make your statement on video, then I'll let my officers put hands on you," meaning assault Plaintiff. Bonffil said, "We'll beat your ass so bad you won't remember what happened." Archuleta then asked, "Do you still want to do the complaint?" Plaintiff said he did not. Officer Crotty (not a defendant) was also present.

Plaintiff was taken to the Outpatient Housing Unit ("OHU") and on August 26, 2016 was transferred to the California Health Care Facility in Stockton, California. There, Plaintiff met with psychologist Dr. Pease. Plaintiff told her that he had been issued a false RVR.

On September 8, 2016, Plaintiff attended a hearing on said RVR. Plaintiff pled guilty to the charge since he was told he would receive a 10 week term rather than 90

5

days.

On September 12, 2016, Plaintiff was transferred to Salinas Valley State Prison's Enhanced Outpatient Program.

Since he was raped by Moore, Plaintiff has had nightmares and urinates on himself. He has nerve damage in his right thumb and psychological and emotional distress. He seeks compensatory and punitive damages.

**IV. Discussion**

    **A. Eighth Amendment**

The Eighth Amendment protects prisoners from both excessive uses of force and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).

        **a. Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted).

Here, Plaintiff claims that on August 24, 2016, Carmona shook him, yelled "stop resisting," and threw him down to the ground, after which Alba handcuffed Plaintiff (intentionally making them tight enough to "cut" Plaintiff), then repeatedly pulled Plaintiff

up by the handcuff chain and dropped him to the ground. As to Carmona, Plaintiff claims the statement "stop resisting" was meant to cover up the fact that Carmona was about the throw Plaintiff to the ground for no reason, since at the time, Plaintiff was still and compliant. These facts are sufficient to allege an excessive force claim against Carmona and Alba.

### b. Failure to Protect

To make out a claim for failure to protect, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. <u>Farmer</u>, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." <u>Id.</u> at 837; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. <u>Farmer</u>, 511 U.S. at 842.

Plaintiff contends that prior to being assigned to inmate Moore's cell at CCI, he told Defendants Campa and Cribbs (both CSP employees) that he was afraid of Moore. He also submitted a 602 and a CDCR 22 stating he was afraid of Moore. The 602 was forwarded to CCI.

Simply alleging he was afraid of Moore without specifying whether Plaintiff told any CCI officials about the basis for his fear or how two CSP employees were responsible for ensuring that Plaintiff was not housed with Moore when he returned to CCI, or that they had any ability or obligation to do anything more than forward Plaintiff's 602 to the institution equipped to address it, is not enough to allege either Defendant was deliberately indifferent to Plaintiff's safety. Plaintiff was already given notice of this deficiency and failed to correct it. He should not be given additional leave to amend.

**B.     Retaliation**

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord* Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint or grievance is constitutionally protected. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison

authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff claims Carmona retaliated against him for filing complaints and agreeing to testify in another inmate's disciplinary hearing by issuing Plaintiff a false disciplinary charge. Taking Plaintiff's allegations as true, he has stated a cognizable claim for retaliation against Carmona for issuing a false disciplinary charge. To the extent Plaintiff believes Carmona orchestrated his move into Moore's cell in retaliation for Plaintiff's complaints, as Plaintiff was previously informed, that claim is too speculative and should be dismissed without leave to amend.

Plaintiff further contends that Defendants Bonffil and Archuleta threatened to physically harm Plaintiff if he made a staff complaint. As a result, Plaintiff did not make a complaint. These threats are sufficient to make a claim against Defendants Bonffil and Archuleta for retaliation. See Uribe v. McKesson, No. 1:08-cv-01285, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) ("In the retaliation context, there is no 'legal distinction between the filing of a charge which is clearly protected and threatening to file a charge.' The 'conduct' which is protected in both the pursuit of litigation and the grievance procedures is the First Amendment right to petition for redress") ((quoting Gifford v. Atchison, Topeka, & Santa Fe Ry. Co., 685 F.2d 1149, 1155–56 n.3 (9th Cir. 1982)).

### C. Bane Act

The Bane Act "provides that a person may bring a cause of action 'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion,' with the exercise or enjoyment of any constitutional or statutory right." Bay Area Rapid Transit Dist. v. Super. Ct., 38 Cal.App.4th 141, 144 (1995) (quoting Cal. Civ. Code, § 52.1); Venagas v. County of Los Angeles, 32 Cal. 4th 820, 841 (2004). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff

to do something that he or she was not required to do under the law." <u>Austin B. v. Escondido Union School Dist.</u>, 149 Cal. App. 4th 860, 883 (2007) (citing <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329, 334 (1998)). A claim under Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by coercion." <u>Jones</u>, 17 Cal. 4th at 334.

Plaintiff states that Defendants Bonffil and Archuleta interfered with Plaintiff's right to make a staff complaint against Carmona for retaliation by threatening to beat him. As a result, Plaintiff did not file a staff complaint. These allegations are sufficient to state a claim under the Bane Act.

### K.     California State Tort Claims

Plaintiff accuses Defendants Carmona and Alba of assault and battery, and Defendants Cribbs and Campa of negligence. These are state tort claims. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." <u>ACI v. Varian Assoc., Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966).

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. <u>State v. Super. Ct. of Kings Cty. (Bodde)</u>, 90 P.3d 116, 124 (2004); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir.

1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Super. Ct., 90 P.3d at 124; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004).

Plaintiff states he timely filed a claim with the Board and it was rejected. The Court therefore turns to the merits of Plaintiff's tort claims.

### 1. Assault and Battery

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988). For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted). For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Id. (citation and quotations omitted).

Plaintiff states Carmona committed assault and battery when he slammed Plaintiff on the dirt floor without cause. Likewise, Alba, on Carmona's instruction, cuffed Plaintiff so tightly that the cuffs cut his wrists, then repeatedly yanked Plaintiff up by the handcuff chain and dropped Plaintiff on the ground. These allegations are sufficient to state a claim for assault and battery.

11

### 2. Negligence

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). Under California law, "'[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)).

In a negligence action the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury. Jackson v. Ryder Truck Rental, Inc., 16 Cal. App. 4th 1830, 1846 (1993). The element of causation generally consists of two components. Id. at 1847. The plaintiff must show (1) the defendant's act or omission was a cause in fact of the plaintiff's injury, and (2) the defendant should be held responsible for negligently causing the plaintiff's injury. Id. The second component is a normative or evaluative one that asks whether the defendant should owe the plaintiff a legal duty of reasonable care under the circumstances of the case.

Plaintiff claims that due to Defendants Campa and Cribbs' negligence, he was housed in a cell with an inmate who raped and assaulted him. Plaintiff fails, however, to establish how each defendant had a duty to prevent such a cell sharing, how each breached that duty, or how that breach led to the harm Plaintiff suffered. Plaintiff's negligence claims should be dismissed without leave to amend.

**V. Conclusion**

Plaintiff's complaint states a claim against Defendants Carmona and Alba for excessive force in violation of the Eighth Amendment and assault and battery in violation of California state law, against Carmona, Bonffil, and Archuleta for retaliation in violation of the First Amendment, and against Bonffil and Archuleta in violation of the Bane Act. It states no other cognizable claims. The Court has previously granted Plaintiff an

12

opportunity to amend his claims, and thus finds that further leave to amend would be futile.

Accordingly, it is HEREBY ORDERED that:

1. Service shall be initiated on the following Defendants:

    **CORRECTIONAL OFFICER HECTOR CARMONA**

    **CORRECTIONAL OFFICER ALBA**

    **CORRECTIONAL LIEUTENANT ARCHULETA**

    **CORRECTIONAL SERGEANT BONFFIL**

2. The Clerk of the Court shall send Plaintiff four (4) USM-285 forms, four (4) summonses, a Notice of Submission of Documents form, an instruction sheet, and a copy of the complaint filed on March 27, 2017.

3. Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

    a. One completed summons for each Defendant listed above;

    b. One completed USM-285 form for each Defendant listed above; and

    c. Five (5) copies of the endorsed complaint filed on March 27, 2017.

4. Plaintiff need not attempt service on the Defendants and need not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs;

5. The failure to comply with this order will result in the undersigned recommending dismissal of this action; and

IT IS HEREBY RECOMMENDED THAT:

6. All remaining non-cognizable claims be DISMISSED with prejudice for failure to state a claim.

These Findings and Recommendation are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen** (14) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 27, 2017    /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE